# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA DeGROAT and GARY CLARK, | No. 3:08cv463 |
| Plaintiffs | (Judge Munley) |
| v. | |
| PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, CHARLES DeFEBO, ERIN SODEN and ROBERT COLLINS, | |
| Defendants | |

## **MEMORANDUM**

Before the court for disposition is the motion for summary judgment filed by Defendants Pennsylvania Department of Transportation ("PennDOT"), Charles DeFebo, Erin Soden and Robert Collins. The motion has been fully briefed and is ripe for disposition.

**Background**

The facts in the instant case are largely uncontested. The parties do, however, dispute the interpretation of those facts and whether the facts can support the causes of action asserted by the plaintiffs.[1]

The Pennsylvania Department of Transportation employs both Plaintiff Donna DeGroat and Plaintiff Gary Clark at its Pike County Maintenance Office. DeGroat is the purchasing agent for the office and Clark is a transportation equipment officer. DeGroat and Clark have been in a relationship for more than fifteen years and are engaged to be married.

In August of 2005, a summer college intern for the Pike County Maintenance Office alleged sexual harassment against Defendant Robert Collins, the manager of the Pike County Maintenance Office. Plaintiff

---

[1]Because the parties generally agree as to the facts, citations to the record have been omitted from this short background section.

DeGroat confronted Collins about a comment he had made to the intern and assisted the intern in reporting the harassment.

Also in August of 2005, DeGroat, along with Clark and a third person, drafted a letter to the Governor and Lieutenant Governor of Pennsylvania complaining of Defendant Collins' mismanagement and the condition of the roads in Pike County. The three faxed a draft of the letter to the Lieutenant Governor's office on August 19, 2005, and mailed the final version on September 6, 2005.

Shortly, thereafter, Plaintiff DeGroat alleges that Collins and Defendant Charles DeFebo, the Pike County Roadway Programs Coordinator, began a series of acts that amounted to workplace harassment.[2] The acts included, *inter alia*, writing DeGroat up as late for work, when in fact she was not late; moving her desk to an undesirable position next to the men's room; denying a request for annual leave; removing papers from her desk; and overzealously reviewing her work.

During this time period, Plaintiff DeGroat filed an Equal Employment Opportunity ("EEO") complaint against Defendant Collins. She filed this complaint internally with PennDOT. She alleged discriminatory and disparate treatment based on her gender. Eventually, Collins filed a disciplinary complaint against Plaintiff DeGroat involving purchasing procedures.

The plaintiffs' complaint and DeGroat's declaration set forth many more instances of alleged workplace harassment. In her complaint, she alleges that the defendants engaged in this conduct in retaliation for her support of the intern's sexual harassment complaint, her letter to the

---

[2]DeFebo became Plaintiff DeGroat's supervisor in August 2005.

Governor's office and her EEO complaint. She also complains that the actions were taken due to her gender. As noted above, Plaintiff Clark also took part in the correspondence that was sent to the Governor's office. Clark asserts that the defendants also took action against him in retaliation for writing the letter.

Federal claims in the complaint include a cause of action under 42 U.S.C. § 1983 ("section 1983") for retaliation against the plaintiffs for exercise of their First Amendment rights. Plaintiff DeGroat also has a gender discrimination in employment cause of action based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)(5) *et seq.* ("Title VII"). The complaint also asserts several state law tort claims.[3] At the close of discovery defendants moved for summary judgment, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to Title VII and section 1983, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws,

---

[3]Specifically, the complaint states:
> Plaintiffs demand judgment of the defendants jointly and severally for deprivation of their federally guaranteed rights and for conspiracy to deprive them of these rights and for violation of Pennsylvania law for intentional interference with contractual relations, civil conspiracy, wrongful discharge, emotional distress, humiliation, embarrassment, and under stress, together with fees, costs, attorney fees and such other relief as this Court may deem appropriate.

(Doc. 1, Compl. 14).

or treaties of the United States."). We have supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the

4

nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendants attack both the plaintiffs' section 1983 claims and DeGroat's Title VII claim. We will address each in turn.

**I. Section 1983 claims**

Plaintiffs bring suit pursuant to section 1983 for violation of the freedom of speech provision of the First Amendment. To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998). Section 1983 does not, by its own terms, create substantive rights. Rather, it only provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws. United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996). In the instant case, it is uncontested that the defendants are state actors. Plaintiffs claim that they were retaliated against for asserting their First Amendment free speech rights.

The law provides: "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). The Third Circuit Court of Appeals has adopted a three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment. See Hill v. City of Scranton, 411

5

F.3d 118, 125 (3d Cir.2005). First, the employee must establish that his activity is protected. Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)); Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997). "Second, the employee must show that the protected activity 'was a substantial factor in the alleged retaliatory action.' " Hill, 411 F.3d at 125 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). "Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." Id. at 125. See also Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).

Defendants move for judgment with regard to each plaintiff based on separate grounds. We will address each in turn.

### A. Plaintiff DeGroat

Defendants concede that Plaintiff DeGroat engaged in protected activity for purposes of the First Amendment claim by participating in the investigation into sexual harassment charges by the intern; sending the letter to the Governor's office; and filing the internal EEO complaint. (Doc. 42, Def. Br. in Supp. at 15). Defendants' position is that they took no action against the plaintiff that could be considered "retaliatory" under the law. Any adverse actions taken against the plaintiffs were *de minimis* according to the defendants. After a careful review, we disagree.

The Third Circuit Court of Appeals has held that an adverse action by the government sufficient to support a retaliation claim has occurred if "'the alleged retaliatory conduct was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment Rights.'" Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (quoting Suppan v. Dadonna, 203 F.3d

6

228, 235 (3d Cir. 2000)).  The United States Supreme Court has explained that "normally petty slights, minor annoyances, and simple lack of good manners" will not support a claim of retaliation.  Burlington Northern and Sante Fay Rwy. Co. v. White, 548 U.S. 53, 68 (2006).  As an example of petty slights the Court notes personality conflicts that generate antipathy and snubbing by co-workers and supervisors.  Id.

An extended campaign of petty harassments, however, can be sufficient to deter a person of ordinary firmness from exercising her rights so as to support a retaliation claim.  Suppan, 203 F.3d at 235; McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (indicating that the court's holding in Suppan was that "a plaintiff's allegation of a 'campaign of retaliatory harassment' by a public employer as a result of the plaintiff's speech created a cognizable First Amendment claim even without an alleged causal connection to a change in plaintiff's terms of employment[.]").

Here the plaintiff has asserted a series of workplace actions including zealously overseeing her work, moving her desk, removing papers from her desk, denying leave days, and suspension.  If examined individually, perhaps these acts would not amount to an adverse action, but taken cumulatively, a factfinder could determine that this was a "campaign of retaliatory harassment" that a would cause a person of ordinary firmness to not exercise her First Amendment rights.   Accordingly, the defendants' motion for summary judgment on this issue will be denied.

**B. Plaintiff Clark**

With regard to Clark, the defendants first argue that he cannot base a retaliation claim on his relationship with the plaintiff.  That is, he cannot assert that his First Amendment association rights were violated by the

7

defendants retaliating against him because of his relationship with Plaintiff DeGroat. Plaintiffs respond that Clark's claims are not based solely on he relationship with DeGroat. They are also based on his taking part in composing the letter to the Governor's office regarding the mismanagement and incompetence of the Pike County District, retaliation for speaking out regarding DeGroat's treatment and raising issues of sexual harassment.

First, we find that Clark cannot state a claim based merely on his relationship with DeGroat. The Third Circuit Court of Appeals has held that third-party retaliation is not actionable. That is, one cannot claim that he was retaliated against because a friend or relative engaged in protected activity. Fogelman v. Mercy Hosp., Inc., 283 F.3d 561, 570 (3d Cir. 2002). In the instant case, however, Clark alleges that he engaged in his own protected conduct, that is, he took part in writing the letter,[4] he filed a grievance, and he filed the instant lawsuit, which he claims led to further retaliation.

Defendants concede that the action taken against Clark, that is failure to promote and transfer (Doc. 49-14, Clark Decl.), is sufficiently adverse to support a claim for retaliation. See Suppan v. Dadonna, 203 F.3d 228, 234 (3d Cir. 2000) (explaining that a failure to promote or transfer is sufficiently adverse to support a First Amendment retaliation

---

[4]Defendants assert that the evidence reveals that Defendant Collins did not even know that Clark aided in the preparation of the letter. This evidence is Collins' own testimony that he did not know. After a review of the record, however, the court finds that sufficient circumstantial evidence exists that would allow the jury to discount Collins' denial and conclude that he did know about Clark's involvement in the letter.

claim).

Accordingly, we find that Plaintiff properly asserts First Amendment activity and retaliatory conduct. We will not grant summary judgment to the defendants on Clark's claim.

## II. Title VII

The second claim that Plaintiff DeGroat asserts is a sex discrimination claim under Title VII. Defendants claim that the evidence is insufficient to support such a claim. We agree. First, however, we want to make clear that the record does not indicate any actual sexual advances, comments, inappropriate touchings etc., directed toward plaintiff DeGroat. Rather, this case is simply a case of retaliation, not of sexual harassment.

Title VII provides that "[i]t shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added).

Thus, in order to pursue a claim for sex discrimination under Title VII, a plaintiff must demonstrate that sex was a substantial factor in the alleged harassment and that if she were a male, she would not have been treated in the same manner. Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir. 1990).

The United States Supreme Court has explained as follows:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or

9

> connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

Oncale v. Sundowner Offshore Svcs., Inc., 523 U.S. 75, 80 (1998) (internal quotation marks and citations omitted).

In the instant case, the record does not support a finding that plaintiff's treatment was *because* of her sex. Plaintiff DeGroat advances three general arguments in support of her position that the treatment was because of her sex. First, she alleges that the context in which this case arose was a sexually harassing environment because her whole ordeal began with supporting or "sticking up" for a woman who alleged that she was being sexually harassed.[5] She was then harassed because of her involvement in the sexual harassment investigation. Moreover, her desk was moved to the front of the office, an area of all men, and placed right outside the men's restroom. Taken all together, we find that these assertions do not support a claim that plaintiff was treated the way she was because of her sex. The actions that were taken against her appear to be gender neutral. It cannot be said, even viewing the matter in the light most favorable to the plaintiff, that she would not have been treated in the same manner had she been a man and supported another's sexual harassment claim. Moreover, the fact that it was a "sexually harassing environment" -

---

[5]According to her declaration, DeGroat heard Defendant Collins make a suggestive remark to a female intern. Plaintiff DeGroat confronted Collins about the remark and told him that it was objectionable. (Doc. 49-11, DeGroat Decl. ¶ 4). After the intern told her of more acts of a sexual nature, DeGroat telephoned a union officer and told him that a problem existed. She then handed the telephone to the intern and let her privately discuss the matter with him. (Id. at ¶ 5).

10

to the extent that women were allegedly being sexually harassed - is insufficient to make plaintiff's case a case of gender discrimination. The record is not clear with regard to the extent of this sexually charged atmosphere, however, it is apparent that it was not this environment that caused the plaintiff to feel discriminated against.[6] It was not until she felt that she was being retaliated against that she decided her rights were being violated.

## III. Statute of limitations

The last argument the defendants make is that several of plaintiffs'

---

[6] To prevail on a "hostile environment" claim, a plaintiff must prove five elements: "(1) the employee suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the presence of respondeat superior liability.'" Kunin v. Sears Roebuck Co., 175 F.3d 289, 293 (3d Cir. 1999) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). The conduct must be serious to create liability: "Title VII does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.'" Faragaher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Oncale, 523 U.S. at 81). Thus, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. at 788. Instead, the conduct must be so severe that it would "amount to a change in the terms and conditions of employment." Id. In the instant case, the record does not support an assertion that pervasive and regular discrimination was suffered by plaintiff because of her sex. The complaint alleges that an intern was harassed, and possibly other young interns were also harassed. It does not assert a general pervasive and regular harassment that would have necessarily affected the plaintiff.

11

claims are barred by the statute of limitations.[7]  We disagree based upon the "continuing violation theory."

The "continuing violation theory" is an equitable exception to the statute of limitations.  <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001). Under the continuing violation doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" <u>Id.</u> (quoting <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir. 1991)).  Instantly, the plaintiffs allege a series of harassing events, or "a campaign of harassment."  Defendants concede that several of these acts are within the statute of limitations.  Therefore, if any conduct occurred outside of the statute of limitations, the continuing violation theory is applicable and the claims are not barred.  Defendants' motion based upon the statute of limitations will be denied.

**Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment will be granted with respect to Plaintiff DeGroat's Title VII claim and denied in all other respects.  As evidenced by the parties' briefs, this case involves many facts and the interpretation of those facts.  It will be for a jury to decide which inferences and conclusions to draw from the evidence.  An appropriate order follows.

---

[7]These claims are that:  Collins retaliated by requiring DeGroat to move her work area; DeFebo wrote up a counseling note; and any allegations prior to March 12, 2006 that DeFebo subjected DeGroat to close oversight.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DeGROAT and GARY CLARK, | : | No. 3:08cv463 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, CHARLES DeFEBO, ERIN SODEN and ROBERT COLLINS, | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this 17 day of February 2011, the defendants' motion for summary judgment (Doc. 30) is hereby **GRANTED** with regard to Plaintiff Donna DeGroat's Title VII claim and **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**